**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| *In Re* SEARCH OF | ) | Civil Action No. 07-46M |
| 2300 FREEPORT, SUITE 7. | ) | |
| | ) | Magistrate Judge Caiazza |
| | ) | |
| | ) | **FILED UNDER SEAL** |

**MEMORANDUM AND ORDER**

**I.   MEMORANDUM**

For the reasons that follow, the Motions for Return of
Property filed in this case (Docs. 7 & 10) will be denied,
subject to the instructions below.

On February 6, 2007, this court issued a search warrant
authorizing the government to seize materials believed to exist
at the address listed in the above caption.  *See* Ex. A to Doc. 7.
The premises were occupied by Thomas R. Ceraso, Esq., and
paralegal James Smith (hereinafter "the Subjects") and, generally
speaking, the property sought consisted of sixteen Kashmir
Sapphires, any paper or computer records regarding the shipment,
receipt or disposition of the same, and like records regarding a
number of identified jewelers.  The Subjects were believed to
have come into the possession of these materials through legal
representation and/or services provided to client Gregory J.
Podlucky.  *See generally id.* at ¶ 2.

The search warrant was executed on February 8, 2007, and the sapphires were not recovered.  The government did, however, seize documents and make complete copies of the contents of four computer hard drives found on the premises.  The Subjects have filed Motions for a return of the property, expressing great concern over the seizure of computer files addressing not only Mr. Podlucky but most if not all of their other clients.  *See generally, e.g.*, Mr. Ceraso's Br. (Doc. 8) at 3 (computer drives are "replete with material protected by the attorney-client privilege as well as covered by the work product rule") (internal quotations omitted).  Among other things, the Motions request the immediate return of all seized materials and disclosure of the sealed affidavit of probable cause to the Subjects' counsel.  *See* Mr. Ceraso's Mot. (Doc. 7) at Wherefore clause.

On February 16, 2007, the Subjects, their counsel, and Assistant U.S. Attorneys James Garrett and Robert Eberhardt appeared in the undersigned's chambers to discuss how to proceed. Mr. Garrett confirmed that the hard drives had yet to be accessed, they were being held in a secure location by Postal Inspector Charles Prucnal, and the government intended to install a privilege team, disassociated with the underlying criminal investigation, to access and review the information.

Upon hearing the parties' respective positions, the undersigned stated conclusions regarding how this matter should

-2-

proceed.  Initially, the court rejected the Subjects' suggestion
that an immediate return of the seized property was appropriate.
*See generally* <u>Klitzman, Klitzman & Gallagher v. Krut</u>, 744 F.2d
955, 969 (3d Cir. 1984) ("A search of a law office is not . . .
*per se* unreasonable.") (citations omitted).  The court did
recognize, however, that the government's seizure of information
regarding all of the Subjects' clients raised serious concerns
regarding confidentiality, attorney-client privilege, and
protected work product.  *See id.* at 959, 962 (although law
offices are not immune from searches, court should "scrutinize
carefully . . . the nature and scope of the search, and any
resulting seizure"; "[t]he procedure should accommodate the needs
of the investigating authorities and at the same time protect the
significant interests of . . . clients who have no connection
with . . . the investigation and also the interests protected by
the work product doctrine").

        After careful consideration, the court declined the
government's suggestion to use a U.S. Attorney privilege team,
but only under the circumstances presented here (*i.e.*, the
complete seizure of a criminal lawyer's/paralegal's files,
including information regarding clients that have been or may be
charged in federal court).  Rather, the undersigned joined the
other federal courts concluding that the appointment of a special
master is appropriate.  *See, e.g.,* <u>U.S. v. Stewart</u>,

2002 WL 1300059, *7 (S.D.N.Y. Jun. 11, 2002) ("this case is exceptional in that the documents . . . are likely to contain privileged materials relating not only to unrelated criminal defendants but also to" clients "for whom there has been no showing of probable cause of criminal conduct"; "[t]he privilege and responsiveness [to warrant] concerns raised by this [case] are . . . exceptional," and they "speak[] in favor of [the] appointment of a [s]pecial [m]aster"); *In re* Search of Scranton Housing Auth., 436 F. Supp.2d 714, 722 (M.D. Pa. 2006) ("the use of government taint teams has often been questioned or outright rejected by the courts, at least in the context of criminal prosecutions"); *see also generally* Klitzman, 744 F.2d at 962 ("the district court and the parties may explore the possible use of a [special] master").

At the close of the conference, the parties agreed to confer and discuss the identification of proper search terms for the special master's use in reviewing the computer files. The undersigned also invited the parties to identify candidates for the special master appointment. In the meantime, the court ordered that the computer and documentary evidence held in Postal Inspector Prucnal's possession would remain in his custody, in a secure location, and not be accessed. *See* text-only Order dated Feb. 16, 2007.

-4-

On February 23, 2007, counsel for Mr. Ceraso advised chambers telephonically that the parties were unable to reach an agreement as contemplated by the court.  He requested a second conference, which was held by telephone on March 5, 2007. Through discussions with counsel, it became clear that disagreement remained regarding significant issues in how to proceed.  In light of the parties' inability to reach an amicable resolution, the court will order the following.

The court appoints as special master Mark S. Yacano, Esq., and his firm Wright, Robinson, Osthimer & Tatum, located in Richmond, Virginia.  Mr. Yacano heads Wright Robinson's Support and Information Practice, "a niche practice group that specializes in the management of . . . data collection and [undertakes] electronic document review projects for corporate clients engaged in complex litigation."  *See* Mr. Yacano's attorney profile at www.wrightrobinson.com.  Mr. Yacano has written extensively on the subject of e-discovery, and chambers' discussions with this counselor (while exercising great care not to reveal the subject matter of this sealed case) has confirmed that his practice group possesses the legal expertise and access to information systems resources to undertake the project.

Although the Wright Robinson Firm's location in Richmond, Virginia at first seemed a possible impediment, upon further consideration the court views it as fortuitous.  The distance

-5-

between Mr. Yacano's Firm and the Subjects' offices in the greater Pittsburgh area reduces the likelihood of conflicts in interest and/or concerns that the Firm has prior knowledge regarding the parties, the criminal investigation, and so forth.

Mr. Yacano (hereinafter "the Special Master") has agreed to execute, to the court's satisfaction, a confidentiality agreement ensuring that none of the information learned by he or his Firm in connection with the Special Master duties will be revealed to any persons other than the court and, as appropriate, the parties in suit.  Once an acceptable confidentiality agreement is in place, the Special Master will be invited to participate by telephone in a conference with opposing counsel (in person) and the court to discuss the following considerations:

- ensuring that there exist no conflicts of interest between the Special Master, his Firm, and the parties;

- the logistics of the court's and/or government's retention of the Special Master, as well as ensuring payment for his services;[1]

- how the Special Master will take possession of the seized materials, maintain the chain of custody, and ensure the hard drives' integrity and security; and

- how the seized documents will be addressed.

---

[1]  In Klitzman, the Third Circuit Court made clear that the government should foot the bill.  *See id.*, 744 F.2d at 962 (special master should be appointed "at the expense of the government").  Upon concluding his work, the Special Master will submit detailed billing records, to be reviewed by the court under general reasonableness standards, while also taking into account his practice group's special expertise.

The Special Master will be charged with formulating appropriate search terms based on the warrant, which is quite specific.  He then will oversee the process of making a comprehensive search of the drives to identify any and all documents responsive to the warrant.  The Special Master will provide to the court paper copies of all responsive materials, and the undersigned will make an independent determination regarding which documents are subject to production and which are not.  Copies of the documents subject to production will be provided by the court to the parties, and the seized materials otherwise will remain with the Special Master until further notice.  Presuming no unforeseen issues arise, the Special Master ultimately will deliver the drives to the Clerk of this Court for placement under seal, and no party, person or attorney will be granted access to the drives absent express order of court.

In light of the court's conducting the privilege review, and given the Special Master's oath of confidentiality, the undersigned cannot see how any potential disagreement regarding search terms and/or methodologies can possibly prejudice the Subjects.  The Special Master, moreover, will provide the court with a brief written report addressing how the search terms and/or methodologies were derived and executed, and the court will ensure that the balance of interests between the government, the Subjects, and their clients has been respected.

-7-

Finally, Target counsels' request to be made privy to the contents of the affidavit of probable cause will be denied for lack of good cause.  The above approach provides the Subjects all the protection to which they are entitled, and the court hereby judicially declares that they have undertaken all necessary and appropriate steps to comply with the Rules of Professional Conduct regarding client confidentiality, attorney-client privilege, and otherwise.

Consistent with the foregoing, the court hereby enters the following:

## II.  ORDER

The Subjects' Motions for the Return of Property (**Docs. 7 & 10**) are **DENIED**, as consistent with the instructions in the above Memorandum.

IT IS SO ORDERED.


March 6, 2007                          Francis X. Caiazza
                                       U.S. Magistrate Judge


cc:

Alexander H. Lindsay, Jr., Esq.
Lindsay, Jackson & Martin
128 South Main Street
Butler, PA  16001

Martin A. Dietz, Esq.
3600 Grant Building
36th Floor
Pittsburgh, PA  15219

-8-

James Y. Garrett, Esq.
Robert Eberhardt, Esq.
U.S. Assistant Attorneys

The Honorable Terrence F. McVerry
United States District Court Judge